John William DARDEN, John L. Dillon, James T. Holmes, Plaintiffs-Appellants,

v.

UNITED STATES STEEL CORPORA-TION, a/k/a U.S.X. Corporation, John Pavia; et al., Defendants-Appellees.

No. 87–7149.

United States Court of Appeals, Eleventh Circuit.

Oct. 26, 1987.

basis claim asserted by plaintiffs here.

William B. Lloyd, Pate Lewis & Lloyd, Birmingham, Ala., for plaintiffs-appellants.

F.A. Flowers, III, Burr & Forman, Birmingham, Ala., for U.S. Steel, John Pavin & William Waller.

S.G. Clark, U.S. Steel, Div. of USX Corp., Pittsburgh, Pa., for U.S. Steel Corp.

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable J. Owen Forrester, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Subsection (a) of § 301 reads,
 (a) Suits for violation of contracts between an employer and a labor organization represent-

Before FAY, Circuit Judge, HENDERSON\*, Senior Circuit Judge, and FORRESTER\*\*, District Judge.

PER CURIAM:

John W. Darden, John L. Dillon and James T. Holmes, members of the United Steelworkers of America (the "Union"), filed separate complaints in the Circuit Court of Jefferson County, Alabama on November 26, 1986 seeking damages for breach of contract, false representations, conspiracy and conversion. The three cases were removed to the United States District Court for the Northern District of Alabama on December 31, 1986. The asserted basis for removal was that the plaintiffs' charges were governed by § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a)[1] (the "LMRA"). On the same day, the defendants, United States Steel Corporation ("U.S. Steel"), John Pavia and William Warren, filed a motion to dismiss or, in the alternative, for summary judgment. On February 6, 1987, the district court granted the motion. The court concluded that these actions "arose under" § 301(a) of the LMRA and that they were subject to dismissal for failure to comply with the mandatory grievance and arbitration procedures set forth in the collective bargaining agreement involved in these cases. We affirm.

Darden went to work for U.S. Steel at its Fairfield facility in Alabama on May 28, 1969. He was laid off in May of 1981. Thereafter he worked for another employer, Radiology Systems of Birmingham, Alabama, as a technician. Dillon began his

ing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a) (1982).

employment with U.S. Steel at its Fairfield facility on July 3, 1972 and was laid off in May of 1981. He subsequently worked for ShowBiz Pizza as an electronics technician. Holmes was employed by U.S. Steel at its plant in Chicago, Illinois from November 21, 1969 to April, 1982 when he was also laid off. In 1983, pursuant to a recall, each of them interviewed for jobs as electronics repairmen at U.S. Steel's new Pipe Mill in Birmingham, Alabama. Each claims that he was induced to take the job by statements and promises made by agents of U.S. Steel that U.S. Steel had enough orders to guarantee his employment for at least ten years.[2] Darden was laid off from the Pipe Mill on July 31, 1986, Dillon on July 30, 1986 and Holmes on March 29, 1986. None of them filed a complaint or grievance against the defendants pursuant to the grievance and arbitration procedure set forth in the collective bargaining agreement.

Darden, Dillon and Holmes filed substantially identical complaints in state court. In count one of each complaint, the plaintiff alleged that the defendants breached an oral agreement of employment and that the agents made fraudulent misrepresentations concerning the terms and conditions of employment. They claimed that as a proximate result of these alleged misrepresentations, they were "laid off" from their Pipe Mill jobs, were "wrongfully and arbitrarily stripped of their seniority" with U.S. Steel, are "unable to return to [their] former position[s]" with U.S. Steel and have lost other "wages and promotional opportunities." In count two of each complaint, the plaintiff alleged that, based on the alleged fraudulent misrepresentation set forth in count one, the defendants committed outrageous conduct by conspiring to deprive him of the economic benefit and economic opportunity derived from his job with U.S. Steel. The plaintiffs also made a charge of conversion. The district court thereafter entered summary judgment in favor of the defendants.

On appeal, Darden, Dillon and Holmes contend that the district court incorrectly concluded that their claims arose under federal law, to wit § 301(a) of the LMRA. Although they concede that a collective bargaining agreement between U.S. Steel and the Union was in effect at the time they went to work at the Pipe Mill, they maintain that their state law claims do not derive from the collective bargaining agreement but rather are based on conduct by the defendants that occurred before they were hired for their Pipe Mill jobs.

The defendants argue that the claims in this case, although couched in terms of violations of state law, when properly characterized, are federal in nature. They insist that the collective bargaining agreement is comprehensive, governing such subjects as rates of pay, hours of work, seniority, layoffs, reductions in force, terminations, severance pay, complaints, grievances and arbitration. The mandatory grievance and arbitration procedure set forth in the agreement provided that all disputes between U.S. Steel and the Union or its members must be submitted to binding arbitration. They assert that, in essence, the plaintiffs' causes of action simply allege a wrongful layoff from the Pipe Mill and challenge conduct specifically addressed in the collective bargaining agreement. They also note that each plaintiff expressly stated in his complaint that the charged conduct violated "existing agreements between the plaintiff's union and U.S. Steel for plaintiff's benefit." Under these circumstances, the defendants reason that these actions clearly came within the pre-emptive scope of § 301.

The threshold, and really the only, issue to be addressed here is whether these cases were properly removed to the district court. Pursuant to 28 U.S.C. § 1441, only state court actions that could have been filed originally in federal court may be removed to federal court by a defendant. Normally, the presence or absence of federal jurisdiction is determined by the "well-pleaded complaint rule." *Louisville &*

---

**2.** Darden and Dillon claim that these statements were made by Pavia on behalf of U.S. Steel.

Holmes alleges that they were made by Warren.

*Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed.2d 126 (1908). Under most circumstances, the plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclusively upon state law. However, there does exist an "independent corollary" to the well-pleaded complaint rule known as the "complete pre-emption doctrine." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). Thus, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* In removing these cases, the defendants invoked federal jurisdiction under § 301 of the LMRA. "Section 301 contemplates suits by and against individual employees as well as between unions and employers." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed. 2d 231 (1976). Section 301 suits "encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Id.* In fact, "[t]he complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims preempted by § 301 of the LMRA." *Caterpillar, Inc. v. Williams,* 482 U.S. ——, ——, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318, 328 (1987). It is well established that § 301 governs, and, hence, preempts claims that are either founded directly on rights created by a collective bargaining agreement or substantially dependent upon an analysis of a collective bargaining agreement. *Id.*

Darden, Dillon and Holmes urge that their state law actions are not preempted by § 301 because their complaints focus on conduct that occurred before they became employees within the scope of the collective bargaining agreement. They argue that at the time they were allegedly induced to begin working at the Pipe Mill, they were not employees as that term is defined in the agreement, which, they say, limits the definition of an employee to one "occupying" a job at the plant. They rely on the *Caterpillar* case, *Varnum v. Nu-Car Carriers, Inc.,* 804 F.2d 638 (11th Cir.1986),

and *Anderson v. Ford Motor Co.,* 803 F.2d 953 (8th Cir.1986) for support. In each of those cases, the respective courts held that the state law causes of action asserted by the respective plaintiffs were not preempted by § 301.

These cases are distinguishable from those under review. In each of those instances, the workers involved clearly were not employees covered by their respective collective bargaining agreements at the time the alleged misrepresentations were made to them. In *Caterpillar,* the plaintiffs were either managerial or weekly salaried employees. *Caterpillar,* 482 U.S. at ——, 107 S.Ct. at 2427, 96 L.Ed.2d at 324. In *Varnum,* the plaintiff was not, nor had he ever been, affiliated with the defendant. *Varnum,* 804 F.2d at 640. In *Anderson,* the plaintiffs were former employees of the company but were "employed as new hires" because their "recall rights had expired due to the length of time they had been on layoff." *Anderson,* 803 F.2d at 954.

 Despite their assertions to the contrary, we find that Darden, Dillon and Holmes were clearly employees within the meaning of the collective bargaining agreement when the alleged misrepresentations, which constitute the crux of their complaints, were made to them. In general, an employee in a layoff status is still an employee for purposes of coverage by a collective bargaining agreement. *See Peerless Pressed Metal Corp. v. International Union of Electrical, Radio & Machine Workers,* 451 F.2d 19, 21 (1st Cir.1971), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973). This is especially true when, as here, the laid-off employees retain their seniority rights and recall rights. *See Id.* at 20. Furthermore, the definition of an employee in the collective bargaining agreement is not limited, as is suggested by the appellants, to those actually working for U.S. Steel. The collective bargaining agreement makes explicit reference to employees who have been "displaced in the course of a reduction in force," those who are "absent because of layoff," employees who have been "laid off from one plant"

and to employees who are "presently on layoff." Under the terms of the collective bargaining agreement, Darden, Dillon and Holmes had not lost their status as employees at the time of the alleged misrepresentations. We see no reason to disturb the district court's conclusion that they were employees who were covered by the collective bargaining agreement at the time they negotiated and accepted their assignments at the Pipe Mill.

The appellants make a halfhearted argument that even if they were employees at the time of the alleged misrepresentations, their claims are still not preempted by § 301 because they do not derive from rights and obligations established by the collective bargaining agreement. They cite *Malia v. RCA Corp.*, 794 F.2d 909 (3d Cir.1986) to support this theory. In *Malia*, the employee, a union member, alleged that the defendant breached an oral contract relating to a management position outside the local bargaining unit. The court held that this claim was independent of, and did not interfere with, the collective bargaining agreement and, hence, was not preempted by § 301. In doing so, however, the court recognized that employees who are members of a collective bargaining unit cannot negotiate individual contracts that are inconsistent with a collective bargaining agreement. *Id.* at 912; *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 362 (5th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

In these cases, as in *Eitmann*, the plaintiffs, union members at the time, are alleging that they entered into oral agreements, for unionized positions, that clearly sought to limit or condition the provisions of the collective bargaining agreement, which established the terms and conditions of employment at the Pipe Mill. We note that, "while individual contracts between employer and employee are not precluded by the existence of a collective bargaining agreement, to the extent that an individual contract and a collective bargaining agreement are inconsistent, the latter must prevail." *Eitmann*, 730 F.2d at 362 (citing *J.I. Case v. NLRB*, 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944)).

Here, the plaintiffs actually allege a violation of the collective bargaining agreement in their complaints. Having done so, it is disingenuous for them now to maintain that their claims are not "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Moreover, in the ad damnum portion of their complaints, Darden, Dillon and Holmes claim lost wages, seniority and job security. Such disputes clearly fall within the pre-emptive scope of § 301. *Hines*, 424 U.S. at 563, 96 S.Ct. at 1056.

█ The collective bargaining agreement in these cases specifically states that its provisions "constitute the sole procedure for the processing and settlement of any claim by an employee or the Union of a violation by the Company of this Agreement," and that "the applicable procedures of the Agreement will be followed for the settlement of all complaints or grievances." It is undisputed that Darden, Dillon and Holmes never filed a complaint or grievance, as is required by the grievance and arbitration procedure of the agreement, challenging the conduct made the basis of these actions against U.S. Steel, the individual defendants or any other entity. As this court has said before, "[w]hen employees asserting an arbitrable grievance have not attempted to utilize the dispute resolution machinery available to them under the agreement, their independent suit against the employer must be dismissed." *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). *See also Redmond v. Dresser Industries, Inc.*, 734 F.2d 633 (11th Cir.1984).

The judgment of the district court is AFFIRMED.