Merry CONAWAY, Appellant,

v.

WEBSTER CITY PRODUCTS CO., Appellee.

Darlene PLAIN, Appellant,

v.

WEBSTER CITY PRODUCTS CO., Appellee.

No. 87–902.

Supreme Court of Iowa.

Nov. 23, 1988.

Tito W. Trevino and James E. Fitzgerald of the Trevino Law Office, Fort Dodge, for appellants.

Lawrence A. Reich and Michael S. Sheehan of Lederer, Reich, Sheldon & Connelly, Chicago, Ill., and David H. Goldman of Black, Reimer & Goldman, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In *Springer v. Weeks & Leo Co.*, we recognized a common law tort action for retaliatory discharge based on the filing of a workers' compensation claim by an at-will employee. 429 N.W.2d 558, 559 (Iowa 1988). We said such conduct by an employer "offends against a clearly articulated public policy of this state." *Id.* We are now called upon to decide whether an employee covered by a collective-bargaining agreement providing a contractual remedy for discharge without just cause may maintain such an action. The district court, predicting our decision in *Springer,* held that the action is preempted by section 301 of the federal Labor Management Relations Act (LMRA). *See* 29 U.S.C. § 185(a). We disagree. Accordingly, we reverse and remand.

## I. Background Facts and Proceedings.

Merry Conaway and Darlene Plain were employed by Webster City Products Company (Company) under a collective-bargaining agreement between the Company and their union, U.A.W. Local No. 442. The agreement contains a grievance and arbitration procedure to settle disputes, including those involving employees' discharges. The agreement also provides that the decision of the arbitrator in resolving such disputes shall be final and binding on all parties. Under the agreement employees may be discharged for "just cause." The agreement also provides that an employee may be discharged for being absent from work for three consecutive days without proof of injury or illness, or for being absent because of injury or illness for more than two years.

The Company alleges that Conaway's employment was terminated pursuant to the three-day absence provision and Plain's pursuant to the two-year absence provision. Conaway and Plain had filed claims for workers' compensation before being discharged.

Both employees filed identical petitions at law against the Company. Each alleged that her discharge violated the collective-bargaining agreement (Count I in each petition) and public policy (Count II in each petition).

The Company filed motions to dismiss in both cases. *See* Iowa R.Civ.P. 216. The district court consolidated the cases for the purpose of hearing on both motions. They were not, however, consolidated for trial.

In arguments to the district court, the employees asserted that violations of public policy had occurred because both discharges were in retaliation for the filing of workers' compensation claims. Treating the motions as summary judgment motions, the court granted both.

In its ruling, the district court assumed from the dicta in our prior cases that we would recognize an action for termination of at-will employment in retaliation for the filing of workers' compensation claims. The court, however, relying on *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105

S.Ct. 1904, 85 L.Ed.2d 206 (1985), held that the two actions were preempted by section 301 of the LMRA. The court's rationale for the preemption holding was that the actions were "inextricably intertwined" with the collective-bargaining agreement. Concluding that the actions were really section 301 claims, the court dismissed the cases for failure to exhaust the grievance and arbitration procedures provided by the collective-bargaining agreement. It is from this ruling that the plaintiffs appeal.

Preliminarily, we address the plaintiffs' assertion that the district court erred in treating the motions to dismiss as motions for summary judgment. Our resolution of the primary issue in this case, which we think is a legal question, makes it unnecessary for us to reach the procedural issue.

## II. *The Preemption Issue.*

■ The article VI supremacy clause of the United States Constitution gives Congress power to preempt state law. *Lueck,* 471 U.S. at 208, 105 S.Ct. at 1909, 85 L.Ed.2d at 213. Though Congress has power to legislate in the area of labor relations, it has not opted to occupy the entire field. *Id.* Thus, congressional intent is the "ultimate touchstone" on the question of whether and to what extent section 301 of the LMRA preempts state law. *Id.* at 208, 105 S.Ct. at 1909–10, 85 L.Ed.2d at 213. The issue then is whether section 301 of the LMRA evinces congressional intent to preempt common law actions grounded on retaliatory discharges for the filing of workers' compensation claims by employees subject to a collective-bargaining agreement. *Cf. Baldracchi v. Pratt & Whitney Aircraft Div.,* 814 F.2d 102, 104 (2d Cir.1987).

Section 301 of the LMRA gives federal courts subject matter jurisdiction over suits involving violations of collective-bargaining agreements. *Id.* It provides in relevant part:

> Suits for violation of contracts between an employee and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor orga-

nizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a). At the time the district court rendered its ruling in these two cases, several important principles involving application of section 301 had emerged from a trilogy of Supreme Court cases.

■ First, besides providing federal court jurisdiction over controversies involving collective-bargaining agreements, section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these ... agreements." *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972, 977 (1957). Second, section 301 requires a court to use federal, rather than state, rules of contract interpretation in interpreting collective-bargaining agreements. This approach insures uniform interpretation of collective-bargaining agreements, thereby promoting the peaceable, consistent resolution of labor-management disputes. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593, 598–600 (1962). And finally, when a state-law claim is substantially dependent upon an analysis of the terms of a collective-bargaining agreement, the claim must either be treated as a section 301 claim, subject to any grievance and arbitration provision provided by the agreement, or be dismissed as preempted by federal labor law. *See Lueck,* 471 U.S. at 217–19, 105 S.Ct. at 1914–15, 85 L.Ed.2d at 219–20.

Generally, Congress does not clearly state in the legislation whether it intends to preempt state laws. When that happens, courts "normally sustain local regulation of the same subject matter unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the states." *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443, 450 (1978). The three principles from *Lincoln Mills, Lucas Flour Co.,* and *Lueck* focus on the

"frustration" rationale underlying the preemption doctrine. Thus, the bigger question is whether our newly-recognized action for retaliatory discharge, as applied, would frustrate the federal labor-contract scheme established by section 301. *Cf. Lueck,* 471 U.S. at 209, 105 S.Ct. at 1910, 85 L.Ed.2d at 214.

While the present cases were pending on appeal, the Supreme Court decided *Lingle v. Norge Div. of Magic Chef,* 486 U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a case that we think is controlling here. The question presented there, as the Court phrased it, was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge." *Id.* at —, 108 S.Ct. at 1879, 100 L.Ed.2d at 415.

The facts in *Lingle* are straightforward and uncomplicated. After the petitioner notified her employer, the respondent, that she had been injured in the course of her employment and was requesting compensation under the Illinois Workers' Compensation Act, she was discharged for filing an allegedly false workers' compensation claim. The union representing the petitioner filed a grievance pursuant to a collective-bargaining agreement provision that protected employees from discharge except for "just" cause and that provided for arbitration of disputes between the employer and employee concerning the effect or interpretation of the agreement.

While arbitration was pending, the petitioner filed a retaliatory discharge action in an Illinois state court, alleging that she had been discharged for exercising her workers' compensation rights. After a motion for removal to the federal district court by the respondent, that court dismissed the complaint as preempted. Relying on *Lueck,* the court concluded that the retaliatory discharge claim was "inextricably intertwined" with the collective-bargaining provision prohibiting discharge without cause, and that allowing the state-law action to proceed would undermine the arbitration procedure in the collective-bargaining agreement.

The Seventh Circuit Court of Appeals agreed with the federal district court and affirmed. The court noted that the Eighth Circuit had held that section 301 preempted these actions while the Second, Third, and Tenth Circuits had held otherwise. Nevertheless, the court concluded that the "better reasoned cases" supported its result. *Lingle v. Norge Div. of Magic Chef,* 823 F.2d 1031, 1047 (7th Cir.1987) (en banc). The Supreme Court granted certiorari to resolve the conflict among the circuits on this question and reversed. *Lingle,* 486 U.S. at —, 108 S.Ct. at 1879, 100 L.Ed.2d at 415–16.

In *Lingle,* the Supreme Court began its analysis by stating the elements, under Illinois law, of the tort of retaliatory discharge for filing a workers' compensation claim. Those elements include a showing of " 'sufficient facts from which it can be inferred that (1) [the plaintiff] was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the [workers' compensation statute] or to interfere with his exercise of those rights.' " *Lingle,* 486 U.S. at —, 108 S.Ct. at 1882, 100 L.Ed.2d at 419 (quoting *Horton v. Miller Chemical Co.,* 776 F.2d 1351, 1356 (7th Cir.1985) (summarizing Illinois state court decisions), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986)).

The Court noted that the elements were purely factual questions pertaining to the conduct of the employee and the conduct and motivation of the employer. *Id.* Focusing on the significant point, the court further noted that neither element requires a court to interpret any part of a collective-bargaining agreement. *Id.*

Turning to the question of defending against a retaliatory discharge claim, the Court pointed out that the employer must show that it had a nonretaliatory reason for the discharge. This, too, the Court said, was a factual inquiry not dependent on the meaning of any provision of the

agreement. *Id.* at —, 108 S.Ct. at 1882, 100 L.Ed.2d at 419–20.

We think the same reasoning applies to the actions here. These actions are of the same kind we recognized in *Springer.* Although in *Springer* we did not spell out the elements of the retaliatory tort involved, we likened it to the tort of interference with contractual relationships. *See Springer*, 429 N.W.2d at 561. In doing so, however, we did not intend to depart from our holding that the newly-recognized action is limited to a violation of public policy.

■ The elements for the tort of interference with contractual relationships are: (1) an existing valid contractual relationship, (2) knowledge of this by the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship, and (4) resulting damage. *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 402–03 (Iowa 1982).

The existing valid contractual relationship here is the employment relationship, the existence of which is a factual question that does not depend on the interpretation of a collective-bargaining agreement. The remaining elements are factual questions pertaining to the conduct of the two employees and the conduct and motivation of the Company. None of these elements require an interpretation of the collective-bargaining agreement.

■ Thus, we conclude the retaliatory tort actions relied on here are independent of the collective-bargaining agreement and are therefore not preempted by section 301 of the LMRA. This is so because resolution of these actions does not require an interpretation of the collective-bargaining agreement.

Our inquiry, however, does not end here because the district court focused on the "just cause" provision of the collective-bargaining agreement in determining that Conaway's and Plain's actions were preempted by section 301. The court read the provision as supplying the same protection to the two plaintiffs as a tort action would. In so doing the court reached the conclusion that the plaintiffs' tort actions

were " 'inextricably intertwined' with consideration of the terms of the bargaining agreement." Given this conclusion, it had to follow that the plaintiffs' actions would be preempted by section 301.

The Supreme Court in *Lingle* rejected similar reasoning:

The [court of appeals] concluded, "the state tort of retaliatory discharge is inextricably intertwined with the collective-bargaining agreements here, because it implicates the *same analysis of the facts* as would an inquiry under the just cause provisions of the agreements." [*Lingle*, 823 F.2d at 1046] (emphasis added). We agree with the court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act preempts state law on the basis of the subject matter of the law in question, section 301 preemption merely insures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a state may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for section 301 preemption purposes.

486 U.S. at —, 108 S.Ct. at 1882–83, 100 L.Ed.2d at 420–21.

In the present case too, the plaintiffs' actions can be resolved without interpreting the collective-bargaining agreement itself. Moreover, in answer to the bigger question posed earlier, the actions the two

plaintiffs are asserting would not frustrate the federal labor-contract scheme established in section 301. Absent such frustration, we think Congress did not intend a section 301 preemption of these kinds of actions.

As the *Lingle* decision requires, we conclude that the actions here are independent of the agreement for section 301 preemption purposes. *See Kemp v. Day & Zimmerman, Inc.*, 239 Iowa 829, 869, 33 N.W. 2d 569, 590 (1948) (decisions of highest federal courts on federal questions and statutes are binding on state courts). The district court erred in concluding otherwise.

III. *Disposition.*

The plaintiffs' actions are recognizable state tort claims. They can be resolved without resorting to an interpretation of the collective-bargaining agreement, regardless of the discharge for just cause provision in the agreement. Thus, the actions are independent for section 301 preemption purposes and are therefore not section 301 claims requiring exhaustion of the grievance and arbitration procedures provided by the collective-bargaining agreement. Under this holding, the plaintiffs properly sued in state court without first going through these procedures. *Cf. Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842, 854 (1967) (when section 301 of the LMRA is implicated, an employee may sue for breach of collective-bargaining agreement only *after* employee exhausts grievance and arbitration procedures provided by agreement). Because the district court concluded otherwise, we reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.