Richard BARSKE, Mark A. Beisker, Daniel J. Brown, Pernell Bump, Mike Burns, Mark Cloos, Loren Coolahan, Dennis Crouse, Carmen S. D'Amico, Duane Ellis, Bruce Esmoil, Bart Fish, Greggory Fisher, Charles Franks, Bret Freeman, Larry Frantz, Russ Fritz, David Gansen, Richard Handel, Jerry Heinzel, Jeryl Hobson, Thomas Hobson, Ronald Houselog, George Hutchens, II, Howard Ihns, Dale Jaeger, Ronald Juett, William Kehrli, Jeffrey L. Leggins, Dean Maier, Michael T. McLaud, Eugene Palmerscheim, Clifford W. Pearcy, Milo Popp, Walter Rich, Mark Roling, Kevin Ropson, Charles Ruth, Randolph Schunk, Fredrick Simmons, Donald Skala, David Speth, Terry Stock, James Strader, William Stranger, George Tegeler, Robert Thomson, Cyril Terpkosh, Carl Tisher, Scott Weber, Richard White, David H. Williams, and Charles Williams, Appellants,

v.

ROCKWELL INTERNATIONAL CORPORATION, Appellee.

No. 93-192.

Supreme Court of Iowa.

April 20, 1994.

Rehearing Denied May 25, 1994.

918

Robert F. Wilson, Robert W. Matias, Crystal L. Usher, and Edward J. Leff of Wilson, Matias, Usher & Leff, Cedar Rapids, for appellants.

D.G. Ribble, Wilford H. Stone, and Thomas D. Wolle of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

The question before us is whether a state law claim for pre-employment misrepresentation is pre-empted by federal labor law. Former employees brought this action in state court against the employer claiming breach of pre-employment agreements and misrepresentations concerning the duration of their employment. A jury returned a verdict in favor of the plaintiffs on the claims of negligent misrepresentation. Following defendant's posttrial motion, the district court set aside the damage awards ruling that the plaintiffs' claims were pre-empted by federal law. We reverse.

## I. *Background.*

Plaintiffs are fifty-four former employees of Rockwell International Corporation (Rockwell). Rockwell operates a plant in Cedar Rapids where it manufactures printing presses. In 1987 and 1988 Rockwell sought to expand its work force and utilized Job Service of Iowa to accept applications for machinist positions. The Job Service contact cards indicated that Rockwell was a very stable employer and had "enough orders on hand right now for the next five years." Each of the plaintiffs completed an employment application, passed a test, and interviewed with management personnel. All but four of the plaintiffs signed application forms which contained a disclaimer stating that their employment was of indefinite duration.

During the job interviews and at an orientation session plaintiffs claimed they were told their employment would be for a period of at least three to five years. They were assured that the company had sufficient orders on hand and the orders were secured by substantial down payments. After the orientation session each of the plaintiffs accepted employment with Rockwell. Though many of the plaintiffs were already living in Iowa, several moved to Cedar Rapids from Arizona, Massachusetts, and Texas. Plaintiffs worked at the plant during part of 1988 and 1989. All of the plaintiffs were laid-off on September 29, 1989.

The positions filled by the plaintiffs were within a bargaining unit which was covered by a collective bargaining agreement (cba) between Rockwell and the International Association of Machinists & Aerospace Workers, AFL–CIO, Harmony Lodge No. 831 (union). The cba governs employee wages, hours, and conditions of employment. It also mandates a grievance process for disputes involving the interpretation or application of the cba and for alleged violations of the cba.

On October 17, 1989, plaintiffs filed their original petition in Iowa district court alleg-

ing that Rockwell breached pre-employment agreements and fraudulently or negligently misrepresented the period of employment. Rockwell filed a notice of removal to federal district court on the ground that the plaintiffs' breach of contract claims required analysis and interpretation of the cba. Plaintiffs filed a motion to remand. In June 1990 the federal court remanded the case to state court ruling that plaintiffs' contract claims were not completely pre-empted by section 301 of the Labor Management Relations Act (LMRA).

Plaintiffs filed an amended and substituted petition in June 1991. In August 1992 Rockwell filed a motion for summary judgment contending that (1) plaintiffs' claims were pre-empted by the cba; (2) plaintiffs failed to pursue their claims through the grievance process; and (3) the disclaimer on the application form barred suit by all but four of the plaintiffs. The district court denied Rockwell's motion and the case proceeded to trial in September 1992. The jury found that the plaintiffs had not established their contract or fraudulent misrepresentation claims, but returned a verdict in their favor on the negligent misrepresentation claims and awarded each plaintiff compensatory damages.

After the court entered judgment on the verdict, Rockwell filed a renewed motion for summary judgment, motion for a judgment notwithstanding the verdict, and an alternative motion for order on prejudgment interest. The court granted Rockwell's motion and set aside the judgment concluding that plaintiffs' claims were pre-empted by the LMRA because any representations made by Rockwell would be inconsistent with provisions of the cba.

On appeal plaintiffs argue that (1) their state law misrepresentation claims are independent of the cba; (2) the disclaimer does not bar their tort claims; and (3) prejudgment interest is allowed on the damage awards. Rockwell argues on cross-appeal that the court should have dismissed all but four of the misrepresentation claims based on the job application disclaimer.

This is an action at law therefore our review is for correction of errors at law. Iowa R.App.P. 4. We are not bound "by the trial court's application of legal principles or its conclusions of law." *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 862 (Iowa 1991).

## II. *Section 301 Pre-emption.*

### A. General Principles.

■ Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185(a) (1988), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The United States Supreme Court has ruled that section 301 does more than confer jurisdiction on federal courts; "it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements...." *Textile Workers Union of Am. v. Lincoln Mills of Alabama,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972, 977 (1957); *see also Conaway v. Webster City Prods. Co.,* 431 N.W.2d 795, 797 (Iowa 1988). State courts have concurrent jurisdiction over section 301 claims. *Charles Dowd Box Co., Inc. v. Courtney,* 368 U.S. 502, 505–06, 82 S.Ct. 519, 521–22, 7 L.Ed.2d 483, 487–88 (1962).

■ In analyzing the pre-emptive effect of section 301, the Supreme Court concluded that "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593, 600 (1962). Pre-emption is necessary to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 & n. 3, 108 S.Ct. 1877, 1880 & n. 3, 100 L.Ed.2d 410, 417 & n. 3 (1988). Thus, federal labor law principles must be employed to resolve disputes involving alleged violations of the cba or requiring interpretation of a

provision or term of the cba. *See Conaway,* 431 N.W.2d at 797.

To effectuate congressional intent the Court has determined that the pre-emptive effect of section 301 must extend beyond contract suits. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–11, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206, 215 (1985). The Court explained that

> [t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Id.* at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215.

■ Yet at the same time the Court made it clear that section 301 pre-emption does not extend to every state law claim that in some manner relates to a provision of a cba or to parties covered by a cba. *Id.* at 211–12, 105 S.Ct. at 1911–12, 85 L.Ed.2d at 215–16. Section 301 pre-emption arises "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract...." *Id.* at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221. The question of pre-emption must necessarily be determined on a case-by-case basis. With these principles in mind, we turn to the question of whether the plaintiffs' claims of pre-employment negligent misrepresentation are pre-empted by section 301 of the LMRA.

The district court concluded that employees covered by a cba could not claim rights which conflict with rights provided under the cba. Because the cba set forth procedures governing probation periods and layoffs, any alleged representations of employment for a definite term necessarily conflicted with the provisions of the cba. The court found it irrelevant that the alleged representations were made before the plaintiffs were hired. We believe the court misapplied the standards for pre-emption.

The district court relied on *J.I. Case Co. v. NLRB,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), to support its conclusion that individual employment contracts cannot be inconsistent with the terms of a cba. In *J.I. Case* the Court held that individual contracts could not be used to defeat or delay procedures prescribed by the NLRB, to limit or condition terms of a cba, or to waive any benefits provided under a labor contract. *Id.* at 337–38, 64 S.Ct. at 580, 88 L.Ed. at 767–68. The Court, however, left open the question of whether an individual contract could offer terms more advantageous than those under a labor contract. *Id.* at 339, 64 S.Ct. at 581, 88 L.Ed. at 768.

■ More recently, in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318, 329 (1987), the Court explained that *"J.I. Case* does not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective-bargaining agreement." Employees covered by labor contracts may assert legal rights independent of the labor contract as long as they do not rely on the cba. *Id.* at 396, 107 S.Ct. at 2431, 96 L.Ed.2d at 329–30. However, in this case we need not decide if plaintiffs' breach of contract claims are pre-empted by section 301 because the jury rejected these claims.

## B. Tort Actions.

■ Although the Supreme Court has not addressed this specific issue, it has set forth certain principles to guide our analysis on the question of pre-emption of state tort actions. The Court has held that Congress did not intend to "pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck,* 471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. We must focus on whether

the tort of negligent misrepresentation confers a right independent of any right established by the cba, "or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. We must also ask whether the tort action would frustrate the federal labor law scheme established by section 301. *Id.* at 209, 105 S.Ct. at 1910, 85 L.Ed.2d at 214; *Conaway,* 431 N.W.2d at 798.

In *Lueck,* the Court held that an action for bad faith handling of an insurance claim under a disability plan (included in the labor contract) was pre-empted by section 301 of the LMRA. 471 U.S. at 220–21, 105 S.Ct. at 1915–16, 85 L.Ed.2d at 220–21. The Court found that the duty of good faith and fair dealing was a right derived from the insurance contract itself, therefore the rights and obligations under the contract would involve interpretation of the cba. *Id.* at 217–19, 105 S.Ct. at 1914–15, 85 L.Ed.2d at 219–20. To allow a breach of contract claim to be characterized as a tort claim "would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Id.* at 220, 105 S.Ct. at 1915, 85 L.Ed.2d at 221.

Similarly in *International Brotherhood of Electric Workers v. Hechler,* 481 U.S. 851, 861–62, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791, 802–03 (1987), the Court found an employee's suit for failure to provide a safe workplace pre-empted by section 301. Because the union had assumed the duty of employee safety, determination of the nature and scope of that duty required construction of the cba. *Id.* at 862, 107 S.Ct. at 2168, 95 L.Ed.2d at 802–03. The Court emphasized that uniformity in the interpretation of labor contracts was paramount. *Id.,* 107 S.Ct. at 2168, 95 L.Ed.2d at 803.

The Court's most recent look at section 301 pre-emption involved an employee's action for retaliatory discharge. *Lingle,* 486 U.S. at 412–13, 108 S.Ct. at 1885, 100 L.Ed.2d at 422–23; *see also Conaway,* 431 N.W.2d at 800. The Court began its analysis by examining the elements of the tort of retaliatory discharge under state law and noted that "[e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882, 100 L.Ed.2d at 419. Further, the defense of the claim also involved a purely factual inquiry. The Court concluded the tort action was not pre-empted because resolution of the claim did not require construction of the cba and it would not frustrate the goal of uniformity. *Id.* at 407, 108 S.Ct. at 1882, 100 L.Ed.2d at 419–20.

In *Lingle* the Court rejected the employer's argument that because a state court would perform the same analysis of the facts as if the plaintiff had brought an action for discharge without "just cause" under the cba, it rendered the claim substantially dependent upon analysis of the cba. *Id.* at 408–10, 108 S.Ct. at 1882–83, 100 L.Ed.2d at 420–21. So "long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 410, 108 S.Ct. at 1883, 100 L.Ed.2d at 421; *see also Conaway,* 431 N.W.2d at 799–800. The Court also rejected the argument that resolution of the plaintiffs' damage claims depended on the cba. *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12, 100 L.Ed.2d at 423 n. 12.

### C. Misrepresentation Actions.

Here, the parties point to decisions from a number of federal courts of appeals which have addressed the issue of section 301 pre-emption of fraud and misrepresentation claims. While all of the courts have agreed that such claims are only pre-empted to the extent they "substantially depend" on the interpretation of a cba, they have reached different results on the specific question of whether in fact there would be substantial dependence in the case before them.

Plaintiffs rely on decisions from the Third, Eighth, and Eleventh Circuits to support their arguments. In a case decided shortly after *Lueck,* the Eighth Circuit held that employees' claims of fraudulent misrepresentation were not pre-empted by section 301.

*Anderson v. Ford Motor Co.,* 803 F.2d 953, 959 (8th Cir.1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987). The court explained in *Anderson* that the torts of fraudulent and negligent misrepresentation "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement." *Id.* at 959. Resolution of the tort claims would not interfere with the rights and duties established by the cba because the tort obligations did not arise from the labor contract. *Id.* Essential to its decision was the fact that the alleged representations of permanent employment were made by the employer before hiring the plaintiffs. *Id.* The court also ruled that the parties were not required to submit to arbitration for matters not covered by the cba. *Id.* at 959.

In a later case involving a variety of tort claims the same court clarified the pre-emption analysis:

> The factual background of the entire case must be examined against an analysis of the state tort claim and a determination made whether the provisions of the collective bargaining agreement come into play.... Should affirmative defenses attempt to implicate the collective bargaining agreement, the district court should carefully analyze whether in actuality construction or interpretation of the collective bargaining agreement is required in considering such defenses.

*Hanks v. General Motors Corp.,* 859 F.2d 67, 70 (8th Cir.1988).

Likewise the court of appeals in *Varnum v. Nu–Car Carriers, Inc.,* 804 F.2d 638, 640 (11th Cir.1986), held that an employee's claim of fraudulent misrepresentation of employment conditions was not pre-empted by section 301. The court noted the complaint focused on conduct occurring prior to when the plaintiff accepted employment and did not go to a term of employment covered by the cba. *Id.* The Third Circuit has also concluded that an employee's claims of fraudulent and negligent misrepresentation of job security are not pre-empted. *Berda v. CBS, Inc.,* 881 F.2d 20, 28 (3d Cir.1989). The court in *Berda* found that reference to the cba was not required to establish the elements of the employee's tort claims. Nor did he need to prove that the "oral promise made to him prior to his employment differed from the terms of the collective bargaining agreement in order to get relief." *Id.* at 27. *See also Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1408–10 (9th Cir.1991); *White v. National Steel Corp.,* 938 F.2d 474, 480–82 (4th Cir.1991); *Wells v. General Motors. Corp.,* 881 F.2d 166, 172–75 (5th Cir. 1989).

By contrast, Rockwell points to other decisions where courts have concluded that tort claims for fraud or misrepresentation do not escape the pre-emptive force of section 301. In *Bale v. General Telephone Co. of California,* 795 F.2d 775, 777–78 (9th Cir.1986), laid-off employees sought damages for breach of an oral contract and for misrepresentations concerning their employment status, both made at the time of hiring. The court determined that the state tort claims " 'arose out of the same acts and conduct which formed the basis of' their section 301 claim." *Id.* at 780 (citation omitted). "In order to prove their fraudulent and negligent misrepresentation claims, [the employees] would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believe they had made." *Id.* Under the *Lueck* standard, the court found that their claims were pre-empted. *Id.; see also Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997–98 (9th Cir.1987); *Stallcop v. Kaiser Found. Hosps.,* 820 F.2d 1044, 1048–49 (9th Cir.1987).

In *Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 765–66 (7th Cir.1991), laid-off employees brought a fraud action against the employer for allegedly inducing them to relocate with promises of extended employment. At the time of the employer's alleged promises the employees were employed in collective bargaining positions. *Id.* at 771. The union had modified the cba by ratifying a specific closure agreement which addressed plant closings. *Id.* at 765–66. Examining the elements of fraud under state law, the court determined that proof of the element of "reasonable reliance" would require interpre-

tation of the closure agreement. *Id.* at 766–67. *See also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 661–62 (7th Cir.1992); *Dougherty v. American Tel. & Tel. Co.,* 902 F.2d 201, 203–04 (2d Cir.1990); *Darden v. United States Steel Corp.,* 830 F.2d 1116, 1118–20 (11th Cir.1987).

Upon careful consideration of these decisions, we are persuaded that the *Anderson* analysis ·is more consistent with the standards set forth in *Lueck* and *Lingle.* Plaintiffs in this case claim they were told during their employment interviews and at the orientation session that they could expect employment for a period of three to five years. Based on these assurances each accepted employment with Rockwell.

■ The elements for the tort of negligent misrepresentation are:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Larsen v. United Fed. Sav. & Loan Ass'n of Des Moines,* 300 N.W.2d 281, 287 (Iowa 1981); Restatement (Second) of Torts § 552 (1977); *see also* 1 Iowa Civil Jury Instructions 800.1 (1991). This tort does not depend on the existence of a contractual relationship. *See generally Larsen,* 300 N.W.2d 281; *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969).

■ We believe proof of these elements does not require interpretation of the cba. Instead, it turns on "purely factual questions pertain[ing] to . . . the conduct and motivation of the employer." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882, 100 L.Ed.2d at 419; *see also Anderson,* 803 F.2d at 957–59; *Conaway,* 431 N.W.2d at 799. The reliance factor is satisfied in part by showing that the employees accepted employment with Rockwell. In addition, plaintiffs must prove their reliance was justified under the circumstances. The jury was instructed to consider the plaintiffs' information and intelligence with regard to this issue. The jury found plaintiffs met their burden. In sum, we find that none of the elements of negligent misrepresentation is substantially dependent upon analysis of the cba.

Nevertheless, Rockwell argues that the cba does come into play because the plaintiffs must rely on the differences between what they were promised and what they were actually entitled to under the cba. *See Bale,* 795 F.2d at 780. We find the reasoning of the court in *Bale* unpersuasive. In this context the term "interpret" must be viewed narrowly. If a court were to dismiss a tort action merely because an employer raised the cba as an affirmative defense, the preemption doctrine "would swallow the rule that employees covered by collective bargaining agreements are entitled 'to assert legal rights *independent* of that agreement. . . .'" *Milne,* 960 F.2d at 1410 (citation omitted). Pre-emption is unnecessary unless consideration of a defense also substantially depends on construction of the cba. *See Hanks,* 859 F.2d at 70.

Additionally, Rockwell ignores a crucial factual distinction between this case and the decisions holding in favor of pre-emption. In each of those decisions, with the exception of *Bale,* the alleged misrepresentations were made while the plaintiffs were covered by the cba. *See Talbot,* 961 F.2d at 662; *Smith,* 943 F.2d at 771; *Dougherty,* 902 F.2d at 202–03; *Darden,* 830 F.2d at 1119. Moreover, in both *Smith* and *Darden* the subject matter of the claims was expressly set forth in the cba.

■ In contrast, each of the decisions relied on by the plaintiffs involved situations

where the representations were either made prior to employment or while the employees worked outside the bargaining unit. *See White*, 938 F.2d at 479; *Wells*, 881 F.2d at 172–73; *Berda*, 881 F.2d at 21; *Varnum*, 804 F.2d at 640; *Anderson*, 803 F.2d at 958. Though Rockwell may have had the right to lay-off the plaintiffs under the terms of the cba, we believe it had no absolute right to escape tort liability for pre-employment misrepresentation. *See Belknap, Inc. v. Hale*, 463 U.S. 491, 500–01, 103 S.Ct. 3172, 3177–78, 77 L.Ed.2d 798, 808 (1983) ("[I]t surely does not follow that the employer's otherwise valid promises of permanent employment are nullified by federal law and its otherwise actionable misrepresentations may not be pursued.").

■ Further, we continue to adhere to the view that state law will not be preempted absent a clear statement of congressional intent to occupy an entire field, or "unless it conflicts with federal law or would frustrate the federal scheme." *Conaway*, 431 N.W.2d at 797 (retaliatory discharge claim not pre-empted); *see also Brown v. Garman*, 364 N.W.2d 566, 573 (Iowa 1985) (claim for intentional infliction of emotional distress falls within the local interest exception to the pre-emption doctrine); *Lewis v. Aalfs Mfg., Inc.*, 489 N.W.2d 47, 49 (Iowa App.1992) (disability discrimination claim not pre-empted by LMRA). We therefore hold that the plaintiffs' misrepresentation claims are not pre-empted by section 301 of the LMRA. Consequently the district court erred in setting aside the jury verdict.

### III. *Disclaimer.*

■ On cross-appeal Rockwell asserts the court erred in not ruling as a matter of law that all but four of the plaintiffs' claims were barred by the disclaimer in the employment application. The application form set forth the following statements contained in a paragraph directly above the signature line:

(3) I also acknowledge that this Application is for employment of indefinite duration that can be terminated with or without cause and notice at any time, either by Rockwell or me, except as otherwise provided by the terms of a collective bargaining agreement applicable to me. (4) I understand that no supervisor, manager, or other official or agent of Rockwell has authority to make any agreement (oral, written or implied) or other representations contrary to paragraph 3 above. However, an officer of the Corporation can do so in a written agreement signed by the officer and me.

Plaintiffs seek to avoid the apparent effect of this contractual disclaimer on the ground that it does not bar their tort claims. Rockwell counters by arguing that the disclaimer is specifically directed at representations of permanent employment and that the disclaimer somehow negates the falsity of the information later supplied to the plaintiffs.

Here the jury was instructed on Rockwell's disclaimer defense. This allowed them to consider the effect of the disclaimer with respect to the reliance element. We conclude the misrepresentation claims were properly submitted to the jury.

### IV. *Interest.*

On October 12, 1992, the court directed the clerk to enter judgment against Rockwell with interest at the statutory rate from the date of filing. Following entry of this order Rockwell filed a motion for an order directing that no prejudgment interest be allowed because interest may not be assessed on damages before they occur and the plaintiffs failed to show when their damages actually occurred. Because of the court's decision on the pre-emption issue, it was not necessary to address this claim. Although the interest issue was not addressed in Rockwell's brief or argument on appeal, we will address it here.

■ Iowa Code section 535.3 (1989) provides that interest shall be allowed on all judgments and decrees and it "shall accrue from the date of the commencement of the action." In general, an award of interest under section 535.3 is mandatory. *In re Marriage of Baculis*, 430 N.W.2d 399, 401 (Iowa 1988). We have identified certain exceptions to the application of the interest provision. *Id.* at 402–03. In *Rowen v. LeMars Mutual Insurance Co. of Iowa*, 347

N.W.2d 630, 641 (Iowa 1984), we held that there is no right to prejudgment interest on transactions or injuries which occur after the litigation has commenced. This is not such a case. The court instructed the jury upon the measure of damages based on net lost wages and consequential damages. Therefore, the court did not submit any claim for future damages to the jury.

 Here plaintiffs were injured at the time they were laid-off, even though their damages were not yet fixed in specific sums. *See Mercy Hospital v. Hansen, Lind & Meyer, P.C.,* 456 N.W.2d 666, 674 (Iowa 1990). Normally unliquidated damages become liquidated on the date of the judgment. *Woods v. Schmitt,* 439 N.W.2d 855, 870 (Iowa 1989).

However, the plain language of the statute allows interest to accrue from the date of the commencement of the action. *Mercy Hospital,* 456 N.W.2d at 673–74. We reverse the district court order granting Rockwell's motion for a judgment notwithstanding the verdict and remand to the district court for entry of judgment against Rockwell.

**REVERSED AND REMANDED.**