# IN THE SUPREME COURT OF IOWA

No. 16–0287

Filed June 15, 2018

**SUSAN ACKERMAN,**

Appellant,

vs.

**STATE OF IOWA, IOWA WORKFORCE DEVELOPMENT, TERESA WAHLERT, TERESA HILLARY,** and **DEVON LEWIS,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A former administrative law judge whose employment was covered by a collective bargaining agreement challenges the dismissal of her tort claim of wrongful discharge in violation of public policy for failure to state a claim. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**

Wesley T. Graham and William W. Graham of Graham, Ervanian & Cacciatore, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, Jeffrey C. Peterzalek, Matthew T. Oetker, and Susan J. Hemminger, Assistant Attorneys General, for appellees.

**CADY, Chief Justice.**

A state administrative law judge (ALJ) was terminated shortly after giving unfavorable testimony about the director of her division to the Iowa Senate Government Oversight Committee. The ALJ, whose employment was covered by a collective bargaining agreement (CBA), brought a lawsuit against the State of Iowa, the division, and several named defendants, alleging, among other claims, wrongful termination in violation of public policy. The State moved to dismiss the claim, arguing the common law claim of wrongful discharge is reserved for at-will employees. The district court granted the State's motion. The ALJ appealed, and we transferred the case to the court of appeals. The court of appeals reversed, concluding contract employees may bring common law wrongful-discharge claims. We granted the State's application for further review. For the reasons set forth below, we find that retaliatory discharge claims are not categorically reserved for at-will employees.

## I. Factual Background and Proceedings.

Under the procedural posture of this case, we accept the well-pleaded facts as the factual background to examine the legal issues presented on appeal. *See Hedlund v. State*, 875 N.W.2d 720, 722 (Iowa 2016).

Susan Ackerman served as an ALJ for the Iowa Workforce Development (IWD). She worked in the unemployment insurance appeals bureau. Ackerman began her service as an ALJ in 2000 and was covered by a CBA between the State of Iowa and the American Federation of State, County, and Municipal Employees. The CBA provided that employees may not be suspended, disciplined, or discharged without proper cause. The contract also protected employees from adverse employment actions taken

in retaliation for whistleblowing. The agreement further provided for a grievance procedure.

In 2011, Teresa Wahlert was appointed as director of the IWD by a newly elected governor of Iowa. She subsequently terminated the bureau's chief ALJ and appointed Teresa Hillary and Devon Lewis as the lead workers of the bureau. Over time, Ackerman believed Wahlert, with the aid of Hillary and Lewis, engaged in systematic efforts to pressure the ALJs in the bureau and other employees to render decisions favorable to employers. She also believed that judges who failed to render decisions favorable to employers were subjected to harassment.

In August 2014, Ackerman was subpoenaed to testify about her beliefs and observations before the Iowa Senate Government Oversight Committee. At the hearing, she testified about a hostile work environment and the pressure she perceived by Wahlert to issue decisions in favor of employers. She said she felt powerless to stop Wahlert from improperly influencing the decisions issued by the bureau.

In December 2014, Wahlert suspended Ackerman, pending an investigation into allegations of misconduct. Ackerman believed that the allegations were baseless and that her suspension was done in retaliation for providing truthful testimony to the senate committee.

In January 2015, Ackerman was terminated from her employment. She subsequently filed a lawsuit against IWD, Wahlert, Hillary, and Lewis. In her petition, she alleged the defendants (1) retaliated against her for disclosing information to public officials in violation of Iowa Code section 70A.28 (2015); (2) defamed her; (3) intentionally interfered with contractual relations; (4) breached the State of Iowa's Manager and Supervisors Manual, of which she is a third-party beneficiary; (5) disclosed confidential personnel records in violation of Iowa Code section 22.7;

(6) violated her constitutional rights under the First Amendment; (7) intentionally inflicted emotional distress, and (8) wrongfully discharged her in violation of public policy.

The defendants subsequently moved to dismiss the common law retaliatory discharge claim in count VIII. The defendants solely argued that the claim is reserved for at-will employees, and because Ackerman's employment was covered by a CBA, she could not bring the claim. The district court agreed and dismissed the claim, concluding "[t]o the extent that the agreement provides for a remedy relating to wrongful discharge, Plaintiff is not allowed to apply the narrow exception Iowa courts have reserved for at-will employment to her current situation."

Ackerman appealed and the court of appeals reversed. The court explained that although the common law action of retaliatory discharge is available to at-will employees and indeed has been recognized as an exception to the at-will employment doctrine, such availability does not categorically foreclose recognizing the tort for contract employees. The court found the tort was adopted to protect those with a compelling need for protection from wrongful or retaliatory discharge, and CBA-covered employees indeed require such protection. Accordingly, the court concluded that Ackerman's status as a CBA-covered employee did not preclude her wrongful-discharge claim. We granted defendants' application for further review.

## II. Standard of Review.

We review district court orders "granting a motion to dismiss for correction of errors at law." *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 108 (Iowa 2011). In reviewing the order, "[w]e view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could not be sustained under any state of facts provable

under the petition." *Id.* (alteration in original) (quoting *Griffen v. State*, 767 N.W.2d 633, 634 (Iowa 2009)).

### III. Analysis.

**A. Development of Common Law.** The resolution of this case ultimately rests upon "our duty to develop and announce the common law" when resolving disputes. *Thompson v. Stearns Chem. Corp.*, 345 N.W.2d 131, 134 (Iowa 1984). This body of law is derived from the principles, traditions, and practices developed by courts through the process of justice and allows the civil law to grow and change from one generation to the next in response to changes observed in the needs and values of society. In many ways, the process is part of the foundation of the work of courts in our democratic society and one of the most important components of the legal process itself.

**B. Development of the Retaliatory Discharge Tort.** Thirty years ago, we utilized our authority to recognize the common law tort of retaliatory discharge in violation of public policy in *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988). In *Springer*, an at-will employee was discharged from her employment for pursuing a workers' compensation claim against her employer. *Id.* at 559. While our laws at the time had developed a remedy for tortious interference with a contractual relationship, no remedy existed to protect at-will employees, even from discharge based on reasons that violated or frustrated a well-recognized and defined public policy of our state. *Id.* at 561. In the absence of such a remedy, we adopted a cause of action for tortious termination in violation of public policy. *Id.*

In *Springer*, we found that our state recognized a public policy for workers to seek compensation for work-related injuries. *Id.* at 560. This policy was clearly expressed in the workers' compensation statute, and the

absence of a remedy for at-will employees for discharge in retaliation for pursuing these rights would frustrate and undermine this well-defined policy. *Id.* at 560–61. We acknowledged that contract employees ordinarily have adequate remedies, but did not specifically restrict the new tort to noncontract employees. *Id.* at 561 n.1.

On the heels of *Springer*, we were presented with the question in *Conaway v. Webster City Products Co.*, 431 N.W.2d 795, 797 (Iowa 1988), whether a claim by a CBA-covered employee for retaliatory discharge for filing a workers' compensation claim was preempted by the Labor Management Relations Act. The CBA at issue contained a "grievance and arbitration procedure to settle disputes, including those involving employees' discharges." *Id.* at 796. We held the claims were not preempted by the Act and that the plaintiffs did not need to exhaust the procedures under the CBA before proceeding to state court on its claims. *Id.* at 799–800. Without specifically addressing whether the newly recognized tort of retaliatory discharge was available to contract employees, we recognized that the claim for retaliatory discharge brought by the employees was independent of the CBA. *Id.* at 800. We concluded that the claims were "recognizable state tort claims." *Id.* Accordingly, while the plaintiffs in the case were not at-will employees, we made no suggestion that the new tort was not available to them.

Since *Springer* and *Conaway*, our cases that have examined the retaliatory discharge tort have largely focused on the search for a well-defined public policy to support the application of the tort beyond the circumstances of retaliation for filing for workers' compensation benefits. Generally, these cases have expanded the tort into four categories of protected activity. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 762 (Iowa 2009) ("[O]ur wrongful-discharge cases that have found a violation of

public policy can generally be aligned into four categories of statutorily protected activities: (1) exercising a statutory right or privilege; (2) refusing to commit an unlawful act; (3) performing a statutory obligation; and (4) reporting a statutory violation." (Citations omitted.)). One general category includes retaliatory discharge for performing a statutory obligation, such as providing truthful testimony. *Id.* In *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 286 (Iowa 2000), we recognized a clear public policy in Iowa to provide truthful testimony in legal proceedings. In turn, we found the policy supported a tort claim based on retaliation for intending to testify in a lawsuit against an employer. *Id.* Thus, most of our attention to the continuing development of this tort has focused on the identification of the public policy to support the tort and on whether the discharge undermined the policy. Generally, these are questions of law for courts to decide. *Id.* at 282.

**C. Whether Contract Employees May Bring Common Law Retaliatory Discharge Claims.** The sole question presented to the district court and raised on appeal is one of first impression: whether the tort of wrongful discharge in violation of public policy is categorically reserved for at-will employees, such that a contract employee may not state a claim.

Since *Springer* and *Conaway*, we have considered many retaliatory discharge claims brought by at-will employees. While engaging in our public-policy analysis, we have frequently described the remedy for retaliatory discharge as an exception to the at-will employment doctrine. *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 144 (Iowa 2013) (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as "an exception to Iowa's general rule that employment is at-will"); *Dorshkind v. Oak Park Place Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013) (adjudicating an at-will employee's retaliatory discharge claim and

describing the claim as "a public-policy exception to the general rule of at-will employment"); *Berry*, 803 N.W.2d at 109 (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as "a narrow public-policy exception to the general rule of at-will employment"); *Ballalatak v. All Iowa Agric. Ass'n,* 781 N.W.2d 272, 275 (Iowa 2010) (same); *Jasper*, 764 N.W.2d at 762 (same); *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 79 (Iowa 2001) (same); *Fitzgerald,* 613 N.W.2d at 281 (same); *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 220 (Iowa 1996) (same); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 282 (Iowa 1995) (assessing whether the employee was at will and describing retaliatory discharge claims as a "narrow deviation[]" from the general at-will employment doctrine); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 352 (Iowa 1989) (adjudicating an at-will employee's retaliatory discharge claim and describing the claim as a "public policy exception").

The defendants now use this tendency to support their position that the tort was never intended to apply to employees other than at-will employees who otherwise would have no remedy. The court of appeals rejected this argument as invalid deductive reasoning.[1]

Additionally, we have not exclusively characterized the tort as an exception to the at-will employment doctrine. *See, e.g., Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998) ("*Even an employee at will*, however, may not be terminated for a reason contrary to public policy." (Emphasis added.)); *Sanford v. Meadow Gold Dairies, Inc.*, 534 N.W.2d 410, 412 (Iowa 1995) ("Sanford's retaliatory discharge claim rests on our holdings that public policy is violated when an employee, *even*

---

[1]The court of appeals aptly described defendants' argument as "commit[ting] the fallacy of the inverse (otherwise known as denying the antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q." *NLRB v. Noel Canning*, 573 U.S. ___, ___, 134 S. Ct. 2550, 2603 (2014) (Scalia, J., concurring).

*an employee at-will,* is discharged as a result of seeking workers' compensation benefits." (Emphasis added.)).

While a right given to benefit one group would not necessarily exclude other groups to the right, the "life of the law," as observed by Chief Justice Oliver Wendell Holmes, "has not been logic, it has been experience." *State v. Baldon*, 829 N.W.2d 785, 829 (Iowa 2013) (Appel, J., concurring) (quoting Oliver Wendell Holmes, *The Common Law* 1 (1881)). It is not the product of deductive reasoning, but the accumulations of those choices made by the democratic process of government, including the courts, to guide society over time. As a result, if experience reveals that a right created with one segment of society in mind should extend to others in society, the law must respond. Accordingly, our prior characterization of the retaliatory discharge tort as an exception to the at-will employment doctrine does not confine its common law development or serve as a limitation into the future. Furthermore, it does not bind us to a principle of law applicable to the resolution of this case under the doctrine of stare decisis. Thus, having developed this tort in light of the experiences of our prior cases, we now consider whether it applies to contract employees too.

First, it is important to observe that the purpose of the common law claim of retaliatory discharge is distinct from the purpose of a claim of breach of contract. Contract claims seek to redress the private interests and individual promises of the parties. Retaliatory discharge claims, however, enforce "the communal conscience and common sense of our state in matters of public health, safety, morals, and general welfare." *Jasper*, 764 N.W.2d at 761. As opposed to merely vindicating the private interests of the parties, wrongful-discharge claims vindicate the greater

harm to society when an employee is punished for acting in accordance with a clear public policy.

In *Keveney v. Missouri Military Academy*, the Missouri Supreme Court found the tort of wrongful discharge applies to contract employees as well as at-will employees. 304 S.W.3d 98, 103 (Mo. 2010) (en banc). The court noted that "limiting the wrongful discharge cause of action to at-will employees fails to recognize the distinct underlying purpose of the wrongful discharge cause of action." *Id.* at 102. Whereas a contract claim "enforces privately negotiated terms and conditions of employment," a retaliatory discharge claim "is premised on a conflict between the conditions of employment and constitutional, statutory, or regulatory provisions that are applicable irrespective of the terms of contractual employment." *Id.* Further, the discharge underlying the tort is "not 'wrongful' because it violates the contractual terms of employment," but rather because it is "based on the employer's attempt to condition employment on the violation of public policy." *Id.*

In *Gonzalez v. Prestress Engineering Corp.*, the Illinois Supreme Court affirmed the availability of a wrongful-discharge claim for CBA-covered employees. 503 N.E.2d 308, 313–14 (Ill. 1986). The court noted the tort "claims asserted arise under the clear mandate of Illinois public policy, which exists independent of any privately negotiated contract rights or duties." *Id.* at 313. Indeed, a union employee need not exhaust grievance procedures before asking a court to resolve "a nonderivative State tort action firmly rooted in an important public policy which 'proscribe[s] conduct, [and establishes] rights and obligations, independent of a labor contract.'" *Id.* (alterations in original) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S. Ct. 1904, 1912 (1985)).

In *Retherford v. AT & T Communications of the Mountain States, Inc.*, the Utah Supreme Court similarly extended retaliatory discharge claims to contract employees. 844 P.2d 949, 960 (Utah 1992). The court noted the "primary purpose behind giving employees a right to sue for discharges in violation of public policy is to protect the vital state interests embodied in such policies," and found that it "cannot fulfill such a purpose if [it] hinge[s] this cause of action on employees' contractual status and thus limits its availability to any one class of employees." *Id.* In short, a retaliatory discharge claim "differs in both scope and sanction from any contractual provision that might limit an employer's power to discharge an employee for other than just cause." *Id.* at 959. The distinct purposes of tort and contractual claims support extending the tort to contract employees who seek to vindicate not only their own interests, but also the greater interests of society in guaranteeing that vital policies are not undermined by employer misconduct.

Second, when an employee is discharged in violation of public policy, the employer commits a wrong both in contract *and* in tort. "[W]here a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract . . . a tort action [will] lie for conduct in breach of the contract." *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins.*, 452 N.W.2d 389, 397 (Iowa 1990). Employers have a duty to refrain from acting in contravention of established public policies, and the tort of retaliatory discharge ensures that employees are not impermissibly sanctioned for exercising guaranteed rights. This duty to refrain from retaliatory discharge is independent of the duty to uphold the bargained-for terms of employment.

In *Byrd v. VOCA Corp. of Washington, D.C.*, the District of Columbia Court of Appeals held contract employees may bring retaliatory discharge

claims. 962 A.2d 927, 934 (D.C. 2008). The court found that "[d]enying contract workers the public policy wrongful discharge remedy tends to 'ignore[] the fundamental distinction between tort and contract actions.' " *Id.* (second alteration in original) (quoting *Smith v. Bates Tech. Coll.*, 991 P.2d 1135, 1141 (Wash. 2000) (en banc)). The court explained, "The duty giving rise to the tort remedy is not derived from the covenants of contract, but rather from the employer's obligation to conduct its affairs in conformity with fundamental public policy." *Id.*

Importantly, retaliatory discharge is an intentional tort. *Jasper*, 764 N.W.2d at 769. Nowhere in our law does a contractual employee surrender, by virtue of signing an employment contract, the right to bring a claim for tortious conduct that harms not only the employee, but also the state's clear public policy.

Finally, the existence of contract remedies does not preclude the extension of the tort to contract employees. In jurisdictions that have declined to permit contract employees to bring retaliatory discharge claims, courts have generally found that existing contract remedies are sufficient and obviate the need for the common law claim. *See, e.g., Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 738 P.2d 513, 515 (N.M. 1987) ("Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable."); *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 38 (Pa. 1986) ("[W]e find that a difference in remedies is not enough to justify an extension of the coverage of the wrongful discharge action."); *Hermreck v. United Parcel Serv., Inc.*, 938 P.2d 863, 866 (Wyo. 1997) ("[W]hen another remedy exists to redress the violation of social policy that resulted in the employee's discharge, then no need exists for a court imposed separate

tort action premised on the violation of public policy."). The United States Court of Appeals for the Eighth Circuit has joined in this line of cases and further predicted that we would not allow contract employees to bring retaliatory discharge claims partially on this basis. *See Hagen v. Siouxland Obstetrics & Gynecology, PC*, 799 F.3d 922, 928–30 (8th Cir. 2015).

Yet, these cases overlook the discrete rationales underlying contract and tort remedies. "If an employee is discharged for refusing to violate a public policy requirement, a breach of contract action satisfies private contractual interests but fails to vindicate the violated public interest or to provide a deterrent against future violations." *Keveney*, 304 S.W.3d at 103. When an employer's adverse action "violate[s] not only the employment contract but also clear and substantial public policy, the 'employer is liable for two breaches, one in contract and one in tort.' It follows that the employer must bear the consequences of its actions." *Id.* (quoting *Retherford*, 844 P.2d at 960). Indeed, when an employee is wrongfully discharged, "society is equally aggrieved whether the employee is 'at will' or can be discharged only for 'just cause.'" *Davies v. Am. Airlines, Inc.*, 971 F.2d 463, 469 (10th Cir. 1992) (applying Oklahoma law).

In *Coleman v. Safeway Stores, Inc.*, the Kansas Supreme Court overturned its previous cases that limited retaliatory discharge claims to at-will employees. 752 P.2d 645, 651 (Kan. 1988). In three prior cases, the court had instructed that CBA-covered employees had "an adequate remedy and [did] not need the protection afforded at-will employees." *Id.* at 649. Yet, upon review, the court recognized its error and found that its prior "cases stand for the disturbing proposition that an employee subject to a collective bargaining contract surrenders state tort *remedies* which were neither included in the bargaining process nor intended by the parties to be a part of the contract." *Id.* (emphasis added). Moreover, the

court found its prior decisions effectively granted "employers with collective bargaining contracts [immunization] from accountability for violations of state public policy." *Id.*

In *Retherford,* the Utah Supreme Court explained "the vindication of public policy worked by the tort cause of action cannot be accomplished by a contractual provision that prohibits discharges for any but just cause." 844 P.2d at 960. Contract remedies "satisfy only the private interests of the parties to the agreement," whereas retaliatory discharge remedies "are designed not only to remedy the breach and make the employee whole, but to deter and punish violations of vital state interests." *Id.* An employer who tortiously fires an employee in contravention of an established public policy "should be liable for the more expansive penalties of tort, a potentially harsher liability commensurate with the greater wrong against society." *Id.* Given the multiple harms caused by the employer's adverse action, the court saw "no reason to dilute the force of the double sanction." *Id.*

In *Norris v. Hawaiian Airlines, Inc.*, the Supreme Court of Hawaii similarly extended retaliatory discharge claims to contract employees due to the necessity of imposing tort remedies. 842 P.2d 634, 647 (Haw. 1992). The court noted that the CBA at issue, like many CBAs, limited recovery to reinstatement and back wages. *Id.* Tort damages, however, may include

> special damages, which compensate claimants for specific out of pocket financial expenses and losses, general damages for pain, suffering, and emotional distress, and punitive damages assessed for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter defendant and others from similar conduct in the future.

*Id.* (citation omitted). The court "conclude[d] that the wide disparity between the remedies available under the CBA and the damages potentially recoverable in a state tort action" supported allowing CBA-

covered employees to bring the tort claim. *Id.*; *see also Dunwoody v. Handskill Corp.*, 60 P.3d 1135, 1141 (Or. Ct. App. 2003) ("Given the limited nature of her contract and the substantial divergence between what she is entitled to recover under the two different theories, plaintiff's contract remedies are not adequate.").

In *Keveney*, the Missouri Supreme Court found "it is inconsistent to allow an at-will employee to pursue an action for wrongful discharge while denying a contract employee the same right." 304 S.W.3d at 103. The court explained that "[a]llowing an at-will employee to pursue an action for wrongful discharge 'illogically grants at will employees greater protection from these tortious terminations due to an erroneous presumption that the contractual employee does not need such protection.'" *Id.* (quoting *Smith*, 991 P.2d at 1141).

Retaliatory discharge "in violation of public policy is an intentional tort." *Jasper*, 764 N.W.2d at 769. Accordingly, the tort's remedies cover

> the complete injury, including economic loss such as wages and out-of-pocket expenses, as well as emotional harm. Emotional harm is a personal injury, and economic loss constitutes property damage. Thus, both personal injury and property damage are recoverable.

*Id.* at 769–70 (citation omitted). If a retaliatory discharge "is committed with either actual or legal malice," a plaintiff may seek punitive damages. *Id.* at 773. Thus, at-will employees would indeed receive "greater protection" if contract employees could not bring the claim. *Keveney*, 304 S.W.3d at 103.

Under the defendants' view, wrongfully terminated CBA-covered employees already have an adequate remedy, as they may enforce the CBA's "just cause" provision. However, we agree with all of the above jurisdictions that it is incongruous for some employers to be subject to

deterrent damages for wrongfully discharging an employee, while other employers are immunized from deterrent damages simply because they wrongfully terminated a contract, rather than an at-will, employee. The rationales for awarding punitive damages—punishment and deterrence—are no less compelling when an employer conditions a contract employee's employment on a violation of a clearly established public policy.

When adopting the retaliatory discharge tort in *Springer*, we indeed relied, in part, on an at-will employee's need for protection from improper interferences with employment. 429 N.W.2d at 561. Yet, we also relied on the need to guard against the undermining of legislative principles and schemes by employers who may "abuse their power to terminate by threatening to discharge employees for" acting in accordance with declared public policies. *Id.* (quoting *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978)). Allowing contract employees to bring retaliatory discharge claims ensures that employers are not only held accountable to the wronged employee through contract damages, but are also deterred from future misconduct that is contrary to legislative schemes through tort damages.

In predicting that we would not allow contract employees to bring a retaliatory discharge tort, the court in *Hagen* relied on our holding in *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 684 (Iowa 2001), that an independent contractor of a nursing home could not bring a claim for retaliatory discharge against public policy. *Hagen*, 799 F.3d at 930. In *Harvey*, an independent contractor was terminated after filing a complaint against a nursing home. 634 N.W.2d at 682–83. While we observed the distinctions between employees and independent contractors in *Harvey*, including the disparate bargaining position that normally leaves at-will employees without a remedy, we did not refuse to extend the tort to

independent contractors based on the expectations that they would have contract protections. *Id.* Instead, we found the statute used by the independent contractor in *Harvey* to establish the protected activity to support the tort in the case only extended to nursing home residents and employees of nursing homes. *Id.* at 685–86. Thus, the independent contractor could not establish the critical public policy element of the tort that protected independent contractors in engaging in the activity that resulted in the discharge. *Id.* at 686. In fact, we concluded that the tort remedy first recognized in *Springer* would have applied to the independent contractor in *Harvey* if the statute that prohibited discharge for filing a complaint had been written more broadly to cover independent contractors. *Id.* at 685.

Likewise, in *New Horizons Electronics Marketing, Inc. v. Clarion Corp. of America*, the Appellate Court of Illinois considered whether independent contractors may bring retaliatory discharge claims. 561 N.E.2d 283, 285 (Ill. App. Ct. 1990). In Illinois, both at-will and contract employees may bring retaliatory discharge claims. *Id.*; *see also Midgett v. Sackett-Chi., Inc.*, 473 N.E.2d 1280, 1283 (Ill. 1984) (finding that "in order to provide a complete remedy it is necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement"). However, the court noted that, despite expansion beyond the at-will context, the court had not "expanded the tort outside of the *employment* setting." *New Horizons Elecs. Mktg.*, 561 N.E.2d at 285. The court explained the tort of retaliatory discharge is premised

> on the recognition that "employer and employee do not stand
> on equal footing," and a proper balance must be maintained
> among the employee's interest in operating a business
> efficiently and profitably, the employee's interest in earning a

livelihood and society's interest in seeing its public policies carried out.

*Id.*

While the absence of a remedy to correct a wrong was an important factor in creating the tort for retaliatory discharge thirty years ago, it does not drive us so much in deciding whether to extend the tort to contract employees today. Instead, we are driven by other factors, such as ensuring that victims of intentional torts are fully compensated and that legislative schemes and public policy are not undermined. Accordingly, we hold contract employees may bring common law claims alleging wrongful termination in violation of public policy.

**D. Effect of Ackerman's Statutory Remedy.** Although we find that contract employees, generally, may bring retaliatory discharge claims, Ackerman's specific claim is not so easily resolved. Extending the tort to CBA-covered employees ensures the victim of an intentional tort is fully compensated and legislative schemes are not undermined. However, Ackerman is not a private contract employee, but rather a state employee who is aided by the additional safeguard of a statutory claim.

Iowa Code section 70A.28 provides a direct cause of action for state employees who suffer adverse employment actions in retaliation for whistleblowing. Iowa Code § 70A.28. The statute permits a wronged employee to seek "affirmative relief including reinstatement, with or without back pay, or any other equitable relief the court deems appropriate, including attorney fees and costs." *Id.* § 70A.28(5)(*a*). Ackerman therefore is already provided additional tort remedies for a purportedly wrongful termination in retaliation for whistleblowing and indeed brought a claim under section 70A.28 in her petition.

On appeal, the defendants recognized Ackerman's statutory remedies and, for the first time on further review, argued that we should find section 70A.28 to be exclusive, such that Ackerman is precluded from raising a common law claim. The defendants now urge us to look to *Van Baale v. City of Des Moines*, which found that chapter 400 is an exclusive remedy and therefore civil service employees may not bring separate common law retaliatory discharge claims. 550 N.W.2d 153, 155–56 (Iowa 1996), *abrogated on other grounds by Godfrey v. State*, 898 N.W.2d 844, 872 (Iowa 2017). Section 70A.28 does not expressly declare that its remedies are the exclusive vehicle for state employees to recover for a wrongful discharge in retaliation for whistleblowing. The question, then, of whether Ackerman's remedies under section 70A.28 are adequate, such that she is impliedly precluded from bringing a common law claim, is one of statutory interpretation.

Here, defendants failed to raise this issue at the district court and, instead, exclusively argued retaliatory discharge claims are categorically reserved for at-will employees. This is the issue we decide. The preclusive effect, if any, of section 70A.28 has not been properly litigated and raised on appeal and is therefore beyond our reach. Accordingly, we remand the case to the district court for further resolution of Ackerman's claim.

## IV. Conclusion.

We hold that the common law tort of retaliatory discharge against public policy is generally available to contract employees. We affirm the decision of the court of appeals, reverse the decision of the district court, and remand for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**

All justices concur except Waterman and Mansfield, JJ., who dissent.

**WATERMAN**, **Justice (dissenting).**

I respectfully dissent. This is the wrong case to decide whether contract employees can bring a common law claim for wrongful termination in violation of public policy, a tort specifically created to provide a remedy for at-will employees. Susan Ackerman is not a private contract employee; she is a state employee with both statutory remedies and contract remedies under a collective bargaining agreement. The majority ignores the dispositive threshold question of whether a government employee in Ackerman's position with statutory remedies can also sue under the common law tort. The majority hides the ball by failing to acknowledge that the source of Ackerman's public policy claim is the very statute that provides her remedy. Because her common law claim fails as a matter of law, we should stop there and save for another day the question of whether the common law tort should remain limited to at-will employees.

The tort of wrongful discharge in violation of public policy exists only when two conditions are present: (1) a clearly articulated public policy has been violated and (2) a compelling need for a tort remedy has arisen because no other remedy is available. *See Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 303 (Iowa 2013) ("[T]he exception is narrowly circumscribed to only those policies clearly defined and well-recognized to protect those with a compelling need for protection from wrongful discharge."); *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 684 (Iowa 2001) ("In *Springer* [*v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988)], we adopted the tort of wrongful discharge primarily out of need . . . . We reasoned that an employer could otherwise trample on clear public policy mandates and expectations in terminating employees.").

Ackerman cannot meet the second requirement, which bars her from bringing this common law tort claim because another remedy is available—the remedy provided in Iowa Code section 70A.28 (2015).

I would affirm the district court's ruling dismissing Ackerman's common law claim. Ackerman may pursue contract remedies under the public employee union collective bargaining agreement (CBA). She may also proceed with her statutory right of action under Iowa Code section 70A.28. There is no need to create a third avenue of recovery, especially one that is at odds with the governing legislative enactment—section 70A.28. This is not a case involving a wrong without a remedy that cries out for a judicially created common law tort. Ackerman already has statutory as well as contractual remedies.

In *Harvey*, we emphasized that "we must refrain from extending protection to workers from unfair treatment after our legislature has weighed in on the issue and established the parameters of the governing public policy." 634 N.W.2d at 686. Ackerman relies on section 70A.28 as the statement of public policy underlying her common law tort claim. But this same section also provides statutory remedies, rendering this common law tort claim unavailable to Ackerman.

We allowed at-will employees to bring common law wrongful-discharge claims providing for punitive damages and emotional distress damages in order to vindicate important public interests codified in statutes (such as the right to file a workers' compensation claim) *only* when the statute itself did not create a private right of action to protect that interest. *See Springer*, 429 N.W.2d at 560–61. But we have never recognized a common law claim for wrongful discharge in violation of public policy when a statute, indeed the same statute providing the source of the public policy, also codifies a statutory right of action. To do so now

flies in the face of the policy choices of the elected branches to disallow punitive damages and emotional distress damages for government whistleblowers. *See* Iowa Code § 70A.28(5)(*a*) (allowing only "reinstatement, with or without back pay, or any other equitable relief the court deems appropriate, including attorney fees and costs").[2] Under some circumstances, we can create common law claims that are supplementary and complementary to preexisting statutes. But we have no business as a court creating a common law public policy claim at odds with the statute of origin. Doing so violates the separation of powers. The legislature itself has defined the scope of the public policy in this enactment governing lawsuits by state employees discharged for whistleblowing. And the legislature can have the last word here by overruling today's decision.

The Restatement of Employment Law, which the majority overlooks, recognizes the body of law precluding common law wrongful-discharge public policy torts when, as here, the state's civil service statute provides remedies. Comment *e* to section 5.01, "Wrongful Discharge in Violation of Public Policy," states,

> Courts have also found that many state civil-service statutes create a comprehensive regulatory scheme with adequate remedies against wrongful government-employer decisions, and thus have precluded common-law public-policy claims based on violations of these statutes. Civil-service employees typically cannot recover in tort for a wrongful discharge in violation of public policy. Courts are reluctant to recognize a parallel common-law action that might undermine the civil-service system's administrative

---

[2]In *Godfrey v. State*, a majority of our court concluded the absence of punitive damages under the Iowa Civil Rights Act (ICRA) did not make its statutory remedies inadequate. 898 N.W.2d 844, 881 (Iowa 2017) (Cady, C.J., concurring in part and dissenting in part) ("While not providing punitive damages, [the ICRA] provides full compensation and attorney fees. On these facts, I do not believe an independent *Bivens*-type action is necessary for the sole purpose of providing a punitive-damages remedy."); *id.* at 893 (Mansfield, J., dissenting) ("Once the legislature has provided a remedy, it is not the role of the judiciary to provide a different remedy unless the existing remedy is so deficient as to amount to a denial of due process.").

scheme and its balance between employee and employer interests.

Restatement of Emp't Law § 5.01 cmt. *e,* at 191 (Am. Law Inst. 2015). Illustration 3 provides,

> Employee E is employed by state S and covered by the state's civil-service system. That system provides administrative procedures protecting employees against discharge without cause and authorizes reinstatement with back pay for violations. E is summoned for jury duty, and notifies his supervisor that E will miss work for that reason. E is discharged for being absent from work while on jury duty. E has no common-law tort claim for wrongful discharge in violation of public policy under this Section because the state's comprehensive civil-service system provides E with an adequate remedy.

*Id.* § 5.01 cmt. *e,* illus. 3, at 192. I would follow the Restatement.

The majority notes the State did not move for dismissal on the ground that section 70A.28 provides the exclusive remedy, and accordingly, the majority does not reach that exclusivity issue. The majority instead remands the case to the district court.

Yet in *Walsh v. Wahlert,* we held that a state employee cannot bring a common law cause of action for wrongful termination in violation of public policy because the civil service system "provides a comprehensive framework for the resolution of such claims." ___ N.W.2d ___, ___ (Iowa 2018) (citing *Van Baale v. City of Des Moines,* 550 N.W.2d 153, 156 (Iowa 1996), *abrogated on other grounds by Godfrey v. State,* 898 N.W.2d 844, 872 (Iowa 2017)). *Walsh* is consistent with the Restatement quoted above and requires dismissal of Ackerman's common law wrongful-discharge claim on remand.

Apart from section 70A.28, Ackerman also has a remedy under the CBA and Iowa Code section 20.7(3), both of which provide she may only be terminated for just or proper cause. The State specifically raised this

point below, and the district court also relied on it as an additional ground for dismissal.

> Count VIII provides Plaintiff with an additional avenue for remedy through wrongful discharge. Plaintiff's employment is subject to a collective bargaining agreement, negotiated for her and others in her position. To the extent that the agreement provides for a remedy relating to wrongful discharge, Plaintiff is not allowed to apply the narrow exception Iowa courts have reserved for at-will employment to her current situation.

I agree with the district court and would decline to extend the common law tort to contract employees. This common law tort has always been recognized as a narrow "public-policy exception to the general rule of at-will employment." *Dorshkind*, 835 N.W.2d at 300. We never extended it to contract employees before today, and in every case allowing the tort, we noted the employee's at-will status. I would not abandon the at-will requirement expressed in all of our decisions to date.

As the majority notes, the United States Court of Appeals for the Eighth Circuit reviewed our caselaw to hold only at-will employees may recover under this theory. *Hagen v. Siouxland Obstetrics & Gynecology, PC*, 799 F.3d 922, 930–31 (8th Cir. 2015). Many other jurisdictions are in accord. *See, e.g., Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, 394 F. App'x 987, 992–93 (4th Cir. 2010) (per curiam) (Under South Carolina law, the plaintiff "could not avail herself of the public policy exception [for wrongful discharge in violation of public policy] because she was not an at-will employee of" her employer.); *Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994) ("[U]nder Missouri law, contract employees—those employed for a 'definite term' and who cannot be discharged without just cause—have no state law cause of action for wrongful discharge" because the public-policy exception is limited to at-will employees.); *Fugate v. Frontier W. Va., Inc.*, No. 2:17-cv-00559, 2017

WL 3065216, at \*2 (S.D. W. Va. July 19, 2017) ("The common law cause of action [for wrongful discharge in violation of public policy] recognized [by the Supreme Court of Appeals of West Virginia] . . . is available only to at will employees."); *Randleman v. Johnson*, 162 F. Supp. 3d 482, 488 (M.D.N.C. 2016) (Under North Carolina law, "the tort of wrongful discharge arises only in the context of employees at will." (quoting *Wagoner v. Elkin City Sch.' Bd. of Educ.*, 440 S.E.2d 119, 125 (N.C. Ct. App. 1994))); *Schroer v. Baldwin Filters, Inc.*, No. 8:13CV101, 2013 WL 5781721, at \*6 (D. Neb. Oct. 25, 2013) ("Nebraska case law clearly states being an at-will employee is a factual prerequisite to asserting a claim for wrongful termination in violation of public policy."); *Cullen v. E.H. Friedrich Co.*, 910 F. Supp. 815, 821 (D. Mass. 1995) (Under Massachusetts law, "[t]he cause of action [for wrongful discharge in violation of public policy] is only available to 'at-will' employees."); *Laramee v. French & Bean Co.*, 830 F. Supp. 803, 806 (D. Vt. 1993) (The protection of employees against "discharges which are in violation of a clear and compelling public policy . . . is not provided to employees whose discharge is contractually protected by a just cause provision of a collective bargaining agreement."   (Citations omitted.)); *Tomlinson v. Bd. of Educ. of Bristol*, 629 A.2d 333, 347 n.18 (Conn. 1993) ("[T]he right to recover in tort for wrongful discharge extends only to employees at will." (quoting *D'Ulisse–Cupo v. Bd. of Dirs.*, 520 A.2d 217, 220 n.1 (Conn. 1987))); *Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 738 P.2d 513, 515 (N.M. 1987) ("Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable."); *Haynes v. Zoological Soc'y of Cincinnati*, 652 N.E.2d 948, 951 (Ohio 1995) ("[I]n order for an employee to bring a cause of action [for wrongful termination in violation of public

policy], that employee must have been an employee at will."); *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 38 (Pa. 1986) ("[W]e hold that an action for the tort of wrongful discharge is available only when the employment relationship is at will."); *Hermreck v. United Parcel Serv., Inc.*, 938 P.2d 863, 867 (Wyo. 1997) ("Where an employment contract is present, there does not exist any necessity for invoking a separate action for the tort of retaliatory discharge as to vindicate public policy.").

Contract employees have contract remedies. I would follow the foregoing precedent holding the tort of wrongful discharge in violation of public policy is only available to at-will employees. And I would not purport to hold otherwise in a case in which the plaintiff, a government contract employee who also has statutory remedies, lacks a viable common law claim.

For these reasons, I respectfully dissent.

Mansfield, J., joins this dissent.